UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 15-11823-WRS
                                                         Chapter 13
ALLEN CONWAY COLIN,

    Debtor

SARA EDWARDS,

    Plaintiff                                         Adv. Pro. No. 15-1079-WRS

v.

ALLEN CONWAY COLIN,

    Defendant

## MEMORANDUM DECISION

This adversary proceeding came before the Court for trial on July 29, 2016. Plaintiff Sara Edwards seeks a determination that a debt owed her by Defendant Allen Conway Colin is a non-dischargeable domestic support obligation. Colin contends that the debt is a non-support property settlement that is dischargeable in Chapter 13 bankruptcy. The Court heard testimony from Edwards, Colin, and Edwards' divorce attorney, Robert Reneau. For the reasons set forth below, the Court concludes that the debt is dischargeable in Chapter 13 and enters JUDGMENT FOR THE DEFENDANT.

### I. FACTS & PROCEDURAL HISTORY

#### A. The Marriage

Sara Edwards ("Edwards") married Allen Colin ("Colin") in 1982; the marriage produced two children. Colin is an electrician who is frequently required to move for work, and testified

that the couple had lived in approximately ten different states since 1992. Edwards has a college degree in chemical engineering, but did not hold a full-time job during her marriage to Colin. She home-schooled their children, who have now reached the age of majority.

In 2008 Edwards began caring for her mother, who was afflicted with Alzheimer's disease, and in 2012 moved her mother into their home. Edwards is the primary caregiver for her mother. In 2014 Colin separated from Edwards and filed for divorce in Elmore County, Alabama.

### B. The Divorce

Colin informed Edwards of his divorce petition through a letter, and the parties did not communicate with each other during the divorce except through their attorneys. Colin retained Connie J. Morrow ("Morrow") as his divorce attorney, while Edwards retained Robert B. Reneau ("Reneau") as hers. (Ex. A). Reneau testified that the two primary points of contention in the divorce proceedings were the amount of alimony and the share of Colin's retirement savings that Edwards would receive. In a January 20, 2015 letter Reneau wrote to Morrow, Edwards demanded Colin pay her half of his retirement account and "periodic alimony at the rate of $1,250.00 per month for the next 10 years." (Ex. A). The very next sentence of Reneau's letter stated that as a condition of this offer Colin "would agree that he could not bankrupt against this alimony requirement. . . ." (Ex. A). Reneau testified that Colin countered with an offer to pay Edwards $350.00 per month in periodic alimony for five years and $10,000 from his retirement account. (Ex. C). Edwards's March 2015 mediation position statement and Reneau's April 28, 2015 email to Morrow indicate that this impasse continued up to the parties' mediation on April 30, 2015. (Ex. B and C).

-2-

Case 15-01079    Doc 27    Filed 08/16/16    Entered 08/16/16 14:57:40    Desc Main
Document    Page 2 of 11

The mediation took place at the law office of Jeffrey J. Courtney ("Courtney"), a local bankruptcy attorney who frequently appears before this Court. Reneau testified that he and Edwards were in a separate room from Colin and Morrow and did not have any contact with them except through Courtney. The mediation lasted several hours due to the parties' continued deadlock over alimony. Edwards wanted a sufficient amount to cover health insurance for herself until she becomes eligible for Medicare,[1] and was concerned that Colin would seek to later modify the amount in state court.

The parties' testimony indicates that Courtney first proposed that the alimony be reclassified as property settlement and reduced to $750.00 per month. Reneau testified that Edwards agreed to this because Colin would not be able to modify it and Edwards would not have to claim it as income on her tax returns. Colin agreed to it because it was a lower amount than what Edwards had previously demanded.

Courtney drafted the settlement agreement ("the Agreement"), which stipulated that it "shall be construed as if jointly drafted by the parties." (Ex. D). Under Section III of the Agreement, titled "Personal Property Division," Colin agreed to pay Edwards "the sum of $90,000.00 for property settlement . . . at the rate of no less than $750.00 per month" for 120 consecutive months. (Ex. D). The next sentence clarified that Colin would "not be precluded from 'prepaying' or paying via lump sum to satisfy the said property settlement." (Ex. D). Colin also agreed to pay Edwards 45% of his retirement savings via a qualified domestic relations order; the parties stipulated at trial that this had been paid in lump sum and totaled approximately

---

[1] During their marriage Edwards obtained health insurance through Colin. She would lose this coverage in the divorce.

$169,000. (Ex. D). Under Section V of the Agreement, titled "Alimony," "[b]oth parties forever waive[d] alimony." (Ex. D). The Agreement does not say anything about the parties intending the payments to be for the support of Edwards. The Agreement does not mention the possibility of bankruptcy, and all witnesses testified that the possible consequences of bankruptcy were not considered at the mediation. Both parties and their attorneys signed and notarized the Agreement, and the divorce court entered a judgment incorporating the Agreement.

### C. The Bankruptcy

After the divorce Colin lost his job in Montgomery, Alabama and moved to Dothan, where he experienced financial difficulty. Colin filed Chapter 13 bankruptcy on September 9, 2015, and proposed in his plan to pay Edwards as a non-priority creditor out of a "pot" of $10,350.00. Edwards v. Colin (In re Colin), 546 B.R. 455, 457 (Bankr. M.D. Ala. 2016) (denying Colin's motion for summary judgment).[2] Edwards filed a proof of claim for $87,750.00 that she asserts is entitled to priority as a domestic support obligation, and objected to confirmation of Colin's plan; Colin objected to the priority status of Edwards's claim. Id. Those issues are under advisement pending the outcome of this adversary proceeding.

---

[2] The parties filed three summary judgment motions in this adversary proceeding. The Court's prior opinion in this case denied Colin summary judgment on the ground that he could not use the parol evidence rule to exclude consideration of evidence of the parties' intent outside the Agreement. Colin, 546 B.R. at 460-63. Colin had filed that motion with his answer. The other two summary judgment motions were cross-motions filed at the close of discovery, and were denied orally by the Court. (Docs. 13, 16, and 20).

## II. ANALYSIS

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This is a final order.

### A. Domestic Support Obligations

"The issue in this case is whether the debt Colin owes Edwards is a domestic support obligation under 11 U.S.C. § 523(a)(5), or a mere debt arising out of divorce under 11 U.S.C. § 523(a)(15)." Colin, 546 B.R. at 458. A debt for a domestic support obligation is "never dischargeable" while a debt arising out of divorce under § 523(a)(15) is dischargeable in Chapter 13 bankruptcy. Id. (citing Saggus v. Saggus (In re Saggus), 528 B.R. 452, 457 (Bankr. M.D. Ala. 2015)); *see also* 11 U.S.C. § 1328(a)(2). "Also, a claim for domestic support obligation is entitled to priority under 11 U.S.C. § 507(a)(1)(A), while a claim for a mere debt arising out of divorce is not entitled to priority." Colin, 546 B.R. at 458 (citing Coon v. Henderson (In re Coon), 522 B.R. 357, 361 (Bankr. M.D. Ala. 2014)). "The Bankruptcy Code defines the term 'domestic support obligation' as a debt owed to a former spouse of the debtor that is 'in the nature of alimony, maintenance, or support . . . of such spouse, . . . without regard to whether such debt is expressly so designated[.]" Coon, 522 B.R. at 361 (quoting 11 U.S.C. § 101(14A)(B)).

"Whether a given debt is in the nature of support is an issue of federal law[,]" but state law provides guidance in determining whether an "obligation should be considered 'support' under § 523(a)(5)." Cummings v. Cummings (In re Cummings), 244 F.3d 1263, 1265 (11th Cir. 2001). "To make this determination a bankruptcy court should undertake 'a simple inquiry as to

-5-

whether the obligation can legitimately be characterized as support, that is whether it is in the *nature* of support.'" Id. (quoting Harrell v. Sharp (In re Harrell), 754 F.2d 902, 906 (11th Cir. 1985)) (emphasis in original). "In conducting this inquiry, a court cannot rely solely on the label used by the parties" because "'it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose.'" Id. (quoting Gianakas v. Gianakas (In re Gianakas), 917 F.2d 759, 762 (3d Cir. 1990)). "The court must therefore look beyond the label to examine whether the debt is actually in the nature of support or alimony." Id. "However, bankruptcy courts should *not* relitigate the issues between the divorced spouses, duplicate the efforts of the state court, or alter the terms of the award due to changed circumstances." Christison v. Christison (In re Christison), 201 B.R. 298, 306 (Bankr. M.D. Fla. 1996) (citing Harrell, 754 F.2d at 906-07) (emphasis in original). "A debt is in the nature of support if at the time of its creation the parties *intended* the obligation to function as support or alimony." Cummings, 244 F.3d at 1265 (emphasis added).

In this Court's prior cases it has relied on an eight-factor guide suggested by the Eleventh Circuit for determining whether a debt is a domestic support obligation. *See* Benson v. Benson (In re Benson), 441 Fed. Appx. 650, 651 (11th Cir. 2011) (citing McCollum v. McCollum (In re McCollum), 415 B.R. 625, 631 (Bankr. M.D. Ga. 2009). "In considering these factors, however, it must be remembered that 'the touchstone for dischargeability under § 523(a)(5) is the intent of the parties.'" Colin, 546 B.R. at 459 (quoting Cummings, 244 F.3d at 1266). As the party seeking to hold the debt non-dischargeable, Edwards has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support for her. *See* Cummings, 244 F.3d at 1265; *cf.* Grogan v. Garner, 498 U.S. 279, 287 (1991).

## B. Colin Did Not Intend the Obligation as Support for Edwards

"The starting point of any § 523(a)(5) analysis is the language of the divorce judgment or agreement." Saggus, 528 B.R. at 457. It is difficult to conceive of a less ambiguous contract than the Agreement between Edwards and Colin. To begin with, both parties "expressly waive[d] alimony." (Ex. D). The obligation at issue is located in the section titled "Personal Property Division" and the Agreement repeatedly and unwaveringly refers to it as "property settlement." (Ex. D). Nowhere does the Agreement make any mention about the parties intending this obligation as support. (Ex. D).

Also, there is no provision in the Agreement that would terminate the obligation if Edwards were to die or remarry. (Ex. D). An obligation that is intended as support to the beneficiary loses its purpose in the event of the beneficiary's death or remarriage, the former because the beneficiary would no longer have any use of support and the latter because the new spouse would be expected to provide support. Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984). The Agreement makes no mention of whether the obligation can be modified, but Reneau testified that it cannot and that both parties expressly bargained for the obligation to be non-modifiable. Support obligations are generally subject to modification in Alabama while property settlements generally are not. See Waites v. Reaves, 506 So. 2d 1007, 1008 (Ala. Civ. App. 1987). Finally, Colin testified that he did not deduct the payments he made pursuant to this obligation as alimony on his 2015 tax return, and Edwards did not testify that she claimed the payments she received as income on her tax return. Alimony payments can be deducted from taxable income by the paying party, and must be claimed as taxable income by the beneficiary.

*See* Coon, 522 B.R. at 362 (criticizing a debtor for asserting that an obligation was a dischargeable property settlement after he had deducted his payments on his tax return).

The strongest factor favoring Edwards is the disparity in income between her and Colin at the time they entered the Agreement. *See* Benson, 441 Fed. Appx. At 651 (listing "the parties' financial positions" as a factor to consider). Reneau and Edwards testified that Edwards makes approximately $1,000 per month cleaning houses, and that her ability to work has been significantly compromised by the need to care for her 85-year old mother. Edwards testified that she had been taking her mother with her to work with her, but that it is becoming difficult to do so. At 56 years old and with no vocational experience, Edwards has no reasonable prospects of obtaining employment in her educational field of chemical engineering. Reneau testified that Colin made approximately $75,000 to $80,000 per year as a contract electrician when he entered the Agreement. There is no serious dispute between the parties that Edwards needs the payments to support herself.

Finally, the frequency and number of payments required within the obligation is slightly supportive of Edwards. The fact that the obligation may be paid in installments suggests that it was intended as support, but this inference is undercut by the express provision that Colin could make a lump sum payment if he wished to. (Ex. D). Reneau testified that it is common in divorce proceedings to have a finite period for alimony payments, and their choice of ten years is reasonably explained as the amount of time necessary to permit Edwards to obtain health insurance until she could become eligible for Medicare.

Case 15-01079    Doc 27    Filed 08/16/16    Entered 08/16/16 14:57:40    Desc Main
Document      Page 8 of 11

Taken as a whole, however, the Agreement strongly indicates that the obligation is property settlement rather than alimony. It "did more than simply label payments as alimony or property settlement. It exhibited a structured drafting that purported to deal with separate issues in totally distinct segments of the document." Tilley v. Jessee, 789 F.2d 1074, 1077-78 (4th Cir. 1986). The Agreement "erect[s] a substantial obstacle which [Edwards] [i]s required to overcome." Id. at 1079. The financial disadvantage Edwards faced indicates that she intended to use the payments to support herself. But the simple fact is that, with full benefit of the advice of counsel, she waived her right to alimony in order to obtain a tax benefit and the assurance that the obligation would not be modifiable. Reneau admitted on cross-examination that in 38 years of practice, he had never "disguised" alimony as a property settlement before. He also admitted that if Colin had paid the obligation in lump sum, he would characterize the obligation as alimony in gross – which under Alabama law is akin to property settlement. *See* Coon, 522 B.R. at 363-64.

Reneau testified that he had never had an ex-spouse of a client file bankruptcy before, that he was not aware that property settlement was vulnerable to discharge in Chapter 13 at the time of the mediation, and that he would not have advised Edwards to waive alimony if he had known that. However, Reneau had considered the possibility of bankruptcy during the negotiations, as evidenced by his January 2015 letter to Morrow. Although the bare bankruptcy disclaimer he demanded in that offer would likely not have been enforceable,[3] it suggests that he and Edwards

---

[3] "Pre-petition agreements to not file bankruptcy or to not seek discharge of a debt are generally unenforceable because they violate public policy." Saggus, 528 B.R. at 461 (citing EFS Inc. v. Mercer (In re Mercer), 2013 WL 3367523, *2 (Bankr. M.D. Ala. Jul. 5, 2013); Infinity Group LLC v. Lucas (In re Lucas), 477 B.R. 236, 245-46 (Bankr. M.D. Ala. 2012)).

-9-

had decided to run the risk that Colin would discharge the obligation in bankruptcy in exchange for keeping it non-modifiable in state court.

Even if Edwards did intend to use the obligation to support herself, § 523(a)(5) requires a showing of mutual intent by both parties to characterize the obligation as support. Tilley, 789 F.2d at 1077-78. There is no evidence that Colin intended for the payments to support Edwards. He testified that Edwards's need for health insurance was not discussed at the mediation. Even if he was aware that she intended to use the payments for that purpose, that does not mean that he shared her intention. He also understood that he could pay the obligation in lump sum, and testified that there was no tacit understanding that it was really alimony instead of property settlement.

The parol evidence rule is inapplicable in § 523(a)(5) cases. Colin, 546 B.R. at 463. Nevertheless, the strongest evidence of parties' contractual intentions is the contract itself. Christison, 201 B.R. at 306. When the contract is as unambiguous as the Agreement in this case is, it raises a presumption regarding the parties' intent that cannot be overcome absent "substantial" evidence to the contrary. Tilley, 789 F.2d at 1078. While the Court is sympathetic to Edwards's situation, she has failed to overcome the presumption raised by the Agreement in this case. She has failed to prove that Colin intended the obligation as support for her.

-10-

## III.  CONCLUSION

The debt Allen Colin owes Sara Edwards is not a domestic support obligation.  Therefore, it is a debt arising out of divorce under 11 U.S.C. § 523(a)(15) and is dischargeable in Chapter 13 bankruptcy pursuant to 11 U.S.C. § 1328(a)(2).

Done this 16th day of August, 2016.

United States Bankruptcy Judge

c:  Russell N. Parrish, Attorney for Plaintiff
    Christopher Keith Richardson, Attorney for Defendant